UNITED STATES

v.

Jesus RUIZ, 454 59 6294, Aviation Boatswain's Mate (Launching and Recovery Equipment) Airman Recruit (E–1), U.S. Navy.

NMCM 89 1157.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 12 Jan. 1989.

Decided March 30, 1990.

Capt Dwight H. Sullivan, USMCR, Appellate Defense Counsel.

LT Rosalyn D. Calbert, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, FREYER and STRICKLAND, JJ.

FREYER, Judge:

In accordance with his pleas, the appellant was found guilty of one specification of absence without leave terminated by apprehension, three unlawful entries as lesser-included offenses of specifications alleging burglary with intent to commit larceny, and two specifications of failure to obey a lawful order; and not guilty of one specification of larceny. Contrary to his pleas, he was found guilty of four specifications of larceny and five specifications of burglary, having pled guilty to unlawful entry under each of the latter five specifications. Five prior nonjudicial punishments having been considered, he was sentenced by the military judge to forfeiture of $466.00 per month for three months, confinement for three months, and a bad-conduct discharge.

A further explanation of the charges as they relate to the underlying events is necessary for a proper understanding of both the assignment of error and our decision. On a single night in November of 1988, the appellant unlawfully entered rooms 204, 206, 315, 325, and 330 in the enlisted barracks on board the U.S. Navy Support Facility, Diego Garcia, and allegedly stole property out of two of them, 206 and 330. Room 206 had two occupants, and room 330 had three occupants; rooms 204, 315, and 325 apparently had only one occupant each, and no thefts are alleged from any of those rooms. In reaching a total of eight burglary specifications when only five rooms were unlawfully entered, the Government charged a separate burglary corresponding to each occupant, vice each room. Moreover, the Government charged a total of five larceny specifications, although, supposedly, property was stolen from the two occupants of one room at the same time and from the three occupants of the other room at the same time. Especially in the absence of a pretrial agreement, we are astonished that such egregious overcharging was not attacked before entry of pleas and survived through announcement of findings (although we note that the appellant was found not guilty of the larceny from one of the two occupants of room 206).

After the findings were announced, the military judge, *sua sponte*, raised the subject of multiplicity and dismissed one of the two burglary specifications relating to room 206 and two of the three burglary specifications relating to room 330. In consonance with the views expressed by the defense, he determined that there was no further findings multiplicity. Over the objection of the Government, he ruled that the burglary and corresponding larceny specifications were multiplicious for sentencing. He also ruled that the three larcenies from the different occupants of room 330 were separately punishable.

No authority was cited for any of the foregoing rulings on multiplicity, which the military judge attributed, instead, to "logical sense." As a result, two of the rulings affecting six specifications were in conflict with established precedents. Larceny from multiple occupants of a room at the same time is a single larceny; numerous cases to this effect are codified in paragraph 46c(1)(h)(ii) of the Manual for Courts–Martial (MCM), United States, 1984, Part IV. Burglary with intent to commit an offense and the intended offense are not only separately chargeable, MCM, 1984, Part IV, paragraph 55(c)(7), but also separately punishable, *United States v. Beaver*, 26 M.J. 991 (AFCMR 1988) (burglary with intent to commit larceny and the intended larceny); *United States v. Rose*, 6 M.J. 754 (NCMR 1978), *pet. denied*, 7 M.J. 56 (C.M. A.1979) (burglary with intent to commit rape and the intended rape); *see also United States v. Weaver*, 18 U.S.C.M.A. 173, 39 C.M.R. 173 (1969) (housebreaking with intent to commit larceny and the intended larceny).

With that background in mind, we now turn to the assignment of error. In his post-trial recommendation pursuant to Rule for Courts–Martial (R.C.M.) 1106, MCM, 1984, the staff judge advocate advised the convening authority that the appellant had been convicted of, *inter alia*, four specifications of larceny and five specifications of burglary. Although in a sense that was true, he failed to note that three of the five burglary specifications had thereupon been

dismissed, so that the appellant no longer stood convicted of them. The staff judge advocate's recommendation was duly served on the defense counsel, who declined to submit a response. The appellant now complains of the staff judge advocate's failure to advise the convening authority that three burglary specifications had been dismissed, a failure which, it is claimed, is compounded by the absence of any mention that all the burglary, larceny, and unlawful entry findings arose from events occurring in a single night. Characterizing the staff judge advocate's failure as "plain error," the appellant prays for relief in the form of setting aside the convening authority's action or, in the alternative, ordering that a new court-martial order be issued. The Government disputes the characterization of "plain error" and urges application of the waiver provisions of R.C.M. 1106(f)(6), MCM, 1984.

■ It may be, as this court has stated, that "[p]lain error is a slippery concept without a fixed definition." *United States v. Huffman,* 25 M.J. 758 (NMCMR 1987). Although, in the usual case, whether or not error has occurred and whether or not a particular error is materially prejudicial to the substantial rights of the accused are separate issues, plain error by definition connotes prejudice, although mere prejudice does not ordinarily suffice to overcome waiver. The degree of prejudice is a material factor in determining application of the doctrine. Plain error must be so "particularly egregious" as to undermine the fundamental fairness of the trial or, as in this case, the post-trial review process, and to contribute to a miscarriage of justice, *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). It must be such as to seriously affect the fairness, integrity, or public reputation of judicial proceedings. Moreover, a claim of plain error must be viewed against the entire record. The U.S. Supreme Court has stated flatly: "A *per se* approach to plain-error review is flawed." *United States v. Young,* 470 U.S. at 16 n. 14, 105 S.Ct. at 1047 n. 14. Consequently, if we can conclude with the requisite degree of certainty that, absent the errors, the convening authority's action

would have been no different, to denominate mistakes in a staff judge advocate or legal officer's recommendation in stating the findings adjudged by a court-martial as plain error would be tantamount to applying a *per se* approach and would constitute the "extravagant protection" criticized in *Young* and cases cited therein.

■ Although, unlike the error identified in *United States v. Huffman,* the impact of the errors in the post-trial recommendation could only be upon the convening authority's action on the sentence, our determination is complicated by the erroneous rulings of the military judge regarding the multiplicity for findings and sentence of the larceny specifications pertaining to the three occupants of room 330, as a result of which the military judge sentenced, and the convening authority acted, on the basis of convictions of four larcenies, vice two. With respect to the military judge, any prejudice resulting from this error would most likely have been neutralized by the countervailing error of treating the burglary and larceny specifications as multiplicious for sentencing, but we shall reassess the sentence in light of this error in any event. With respect to the convening authority, we must consider the record as a whole in deciding whether or not to label the staff judge advocate's mistakes as "plain error."

■ In addition to the multiple offenses of which the appellant was properly found guilty, comprising both military offenses and crimes involving moral turpitude, and the five nonjudicial punishments, the record contains substandard enlisted performance evaluations and a naval message, transmitted before the commission of the instant offenses, from the Commander, Naval Military Personnel Command, directing discharge of the appellant for misconduct under other than honorable conditions. On this state of the record, we view the sentence imposed by the military judge as lenient, and we find it inconceivable either that the military judge would have imposed a lighter sentence had he made the correct rulings on multiplicity, or that the conven-

ing authority would have disapproved or suspended any part of the adjudged sentence had the three larceny specifications relating to the occupants of room 330 been consolidated, or had he been correctly advised of the dismissal of three of the five burglary specifications. Accordingly, we decline to set aside the convening authority's action, but we shall take corrective action with regard to the findings and order that a supplementary special court-martial order be issued to promulgate both our decision and the dismissals by the military judge.

After having hopefully attributed inept post-trial processing to "growing pains" associated with the new system of post-trial review, *United States v. Skaar,* 20 M.J. 836 (NMCMR 1985), we took note more than two years later of "the growing number of erroneous staff judge advocate and legal officer recommendations discovered on appellate review" and the failure of trial defense counsel to comment on obvious errors therein. *United States v. Huffman.* As this and many other cases reaching this court indicate, the problem of shoddy post-trial processing continues. Mindful of the drastic measures that an exasperated U.S. Court of Military Appeals has introduced into the military justice system to address past systematic neglects when the judges of that Honorable Court have perceived that cognizant military authorities were refusing to exercise their responsibility to implement administrative solutions,[1] we regard this deteriorating situation as more than just an embarrassment, and we encourage those responsible for the training and performance of counsel to take prompt and effective corrective action so as to obviate the need for a judicial solution, since any judicial solution aimed at systematic neglects, no matter how well-intentioned, typically results in reversals on collateral grounds, unrelated, and usually contrary, to the interests of justice in individual cases.

Returning to the case at hand, we direct that Specifications 1, 2, and 3 of Charge II be consolidated so as to allege a single larceny of the property of the three victims. *See United States v. Sorrell,* 23 M.J. 122 n. 1 (C.M.A.1986). The finding of not guilty of Specification 5 of Charge II makes it unnecessary to direct similar action in regard to Specifications 4 and 5 of that charge. As thus modified, the findings of guilty are affirmed. We have carefully reassessed the sentence in light of the errors discussed above and the principles announced in *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), and have found it to be entirely warranted by the appellant's current offenses and past disciplinary and performance record, notwithstanding his apparent difficulties with alcohol and other matters in extenuation and mitigation. Accordingly, the sentence, as approved on review below, is affirmed. A supplementary special court-martial order will be issued consolidating Specifications 1, 2, and 3 of Charge II and promulgating the dismissal of Specifications 5, 6, and 7 of Charge III.

Chief Judge BYRNE and Judge STRICKLAND concur.

1. *E.g., United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974); *United States v. Brewer,* 1 M.J. 233 (C.M. A.1975).