**UNITED STATES**

v.

**Marcus J. CUNNINGHAM, 412–57–4295, Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 95 01031.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 14 March 1995.

Decided 8 Aug. 1996.

LT E. Rubiella, JAGC, USNR, Appellate Defense Counsel.

LT Andrew J. Waghorn, JAGC, USNR, Appellate Government Counsel.

DeCICCO, Senior Judge:

The question presented in this case is whether the holding of a panel of this Court in *United States v. Smith*, 34 M.J. 894 (N.M.C.M.R.1992), finding plain error in the submission of a post-trial legal officer's recommendation by an enlisted servicemember, should be overturned in light of the Supreme Court's exposition of the meaning of plain error in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In *Olano*, the Supreme Court discussed and more fully defined the concept of plain error under Fed.R.Crim.P. 52(b). We have concluded that *Smith* should not be overturned in light of *Olano*, that plain error exists in this case, and that a new recommendation

and convening authority's action are necessary.

## I. FACTS

The appellant was charged with two unauthorized absences, disobedience of an order and assault in violation of Articles 86, 91, and 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 886, 891, 928.[1] The administrative officer of the Puget Sound Naval Shipyard (a lieutenant commander (O–4)), who is an authorized special court-martial convening authority,[2] referred the charges to trial by special court-martial. The court-martial members convicted the appellant, contrary to his pleas, of an unauthorized absence of an hour and 50 minutes and of willfully disobeying an order to shave. He was acquitted of the other charged offenses. The sentence included confinement for 60 days, reduction to pay grade E–1, and a bad-conduct discharge.

The post-trial recommendation to the convening authority under Article 60(d), UCMJ, and Rule for Courts–Martial [R.C.M.] 1106, Manual for Courts–Martial, United States (1995 ed.), was prepared and signed by a legalman first class (E–6) who held the title of "Legal Officer, Enlisted Personnel." This sailor recommended approval of the sentence. The convening authority's action approving the adjudged sentence stated that the "legal officer's" recommendation was served on trial defense counsel, and that trial defense counsel did not submit comments, challenges or corrections.[3]

---

1. We have noted that the officer who administered the oath to the accuser was not authorized to administer oaths for the purpose of military justice. Article 30(a), UCMJ, 10 U.S.C. § 830(a). He was a lieutenant junior grade (O–2) whose listed authority was "Assistant Director Hotel Services." An officer serving in such a grade and assignment lacked authority to administer the oath to the accuser. Article 136(a), UCMJ, 10 U.S.C. § 936(a); Rule for Courts–Martial 307(b), Manual for Courts–Martial, United States (1995 ed.); Manual of the Judge Advocate General, Judge Advocate General Instruction 5800.7C of 3 Oct. 1990 [JAGMAN], § 0902b(1). This error, which involves only a ministerial act and not an exercise of judgment, was waived because the appellant did not object to trial on unsworn charges. Rule for Courts–Martial 905(e); *Frage v. Moriarty*, 27 M.J. 341, 343 (C.M.A.1988).

2. *See* JAGMAN § 0120b(5).

3. While the format of the recommendation was substantially correct, we have observed that it was not free of error. In the second paragraph, and contrary to earlier advice, it related to the convening authority that the appellant was found guilty in accordance with his pleas. As mentioned above, however, the appellant pleaded not guilty. Next, the recommendation failed to note that the appellant was entitled to wear the Sea Service Deployment Ribbon. This decoration was clearly listed in the appellant's service record and entered into evidence at trial as Defense Exhibit D. Finally, the recommendation left an ambiguity regarding the clemency petition. The sailor in her recommendation stated that the *trial defense counsel* submitted a clemency petition. The only clemency petition contained in the record is one submitted personally *by the appellant*. Left unclear is whether the clemency petition

Upon initial review by this Court, the appellant cited *Smith* and argued that plain error occurred because an enlisted person prepared and signed the legal officer's recommendation. He requested a new recommendation and convening authority's action. *See* Appellant's Summary Assignment of Error dated 2 October 1995 at 2. The Government conceded such action was necessary. *See* Government Reply to Assignment of Error dated 31 October 1995 at 1. By decision of 28 November 1995, we agreed and ordered a new recommendation and action. Shortly thereafter, however, the Court (*en banc*) on its own motion specified the following issue:

> SHOULD *UNITED STATES v. SMITH*, 34 M.J. 894, 898–99 (N.M.C.M.R.1992), WHICH HOLDS THAT "THE SUBMISSION OF THE LEGAL OFFICER REVIEW BY SOMEONE WHO IS NOT A COMMISSIONED OFFICER" IS INHERENTLY PREJUDICIAL AND REVERSIBLE ERROR *PER SE*, BE OVERTURNED IN LIGHT OF *UNITED STATES v. OLANO*, [507 U.S. 725] 113 S.Ct. 1770 [123 L.Ed.2d 508] (1993), WHICH HOLDS THAT AN INDIVIDUALIZED DETERMINATION IS REQUIRED IN MOST CASES AS TO WHETHER THE ERROR "AFFECTED SUBSTANTIAL RIGHTS?" *ID.* AT 1777–78.

signed by the appellant is the same one that was "submitted" by the trial defense counsel.

In light of our disposition of this case finding plain error due to the preparation and signing of the post-trial recommendation by an unqualified person, we need not decide whether the above errors, taken individually or collectively, would have constituted plain error even if the recommendation had been submitted by a qualified officer. *See United States v. Lynch*, 39 M.J. 37 (C.M.A.1993)(summary disposition finding no plain error in failure of staff judge advocate to advise the convening authority that the accused was entitled to wear the Sea Service Deployment Ribbon); *see also United States v. Craig*, 28 M.J. 321, 325 (C.M.A.1989)(holding a remand appropriate where there is uncertainty as to the convening authority's consideration of clemency matters).

4. When the Uniform Code of Military Justice was first enacted, Article 1(14), UCMJ, stated that the term "legal officer" was to be construed to refer to any *officer* in the Navy or Coast Guard designated to perform legal duties for a command.

*See* Court Order of 6 December 1995. Both sides have submitted briefs and oral argument on the question.

## II. DISCUSSION

### A. UCMJ and MCM Requirements

Before a special court-martial convening authority takes action on a case that involves an adjudged bad-conduct discharge, that convening authority "shall obtain and consider the written recommendation of his staff judge advocate or legal officer." Article 60(d), UCMJ, 10 U.S.C. § 860(d). In the Navy, a "judge advocate" is a member of the Judge Advocate General's Corps. Article 1(13)(A), UCMJ, 10 U.S.C. § 801(13)(A). The term "legal officer" means any *commissioned officer* of the Navy, Marine Corps, or Coast Guard designated to perform legal duties for a command. Article 1(12), UCMJ, 10 U.S.C. § 801(12)(emphasis added).[4] A non-lawyer legal officer who is a commissioned officer may prepare and sign the post-trial recommendation. *United States v. Curry*, 28 M.J. 419 (C.M.A.1989). But at no time in the history of the Code has there been any indication that Congress ever intended, and no military appellate court has ever held, that enlisted personnel may assume the role of a staff judge advocate or legal officer in fulfilling military justice responsibilities.[5]

Public Law 506 of May 5, 1950, c. 169, 64 Stat. 1. (Emphasis added.)

The words "commissioned officer" were substituted for the word "officer" for clarity. Public Law 1028 of August 10, 1956, c. 1041, 70A Stat. 36. *See also* 10 U.S.C. § 101(b)(1) which defines "officer" as a commissioned or warrant officer.

5. The legislative history behind the Military Justice Act of 1983, Public Law 98–209, states: "The system today is administered, operated, and monitored by qualified military attorneys at all levels." U.S.Code Congressional and Administrative News, 98th Congress, 1st Session, 1983, Vol. 3, at 2178. One of the purposes of the 1983 amendments was to simplify the post-trial review process so that the primary role involves a determination as to whether the sentence should be reduced as a matter of command prerogative (e.g.clemency) rather than what was previously a formal appellate review. The staff judge advocate was to continue to play an important role in assembling materials to be used by the convening authority in exercising this prerogative. *Id.* at 2180.

R.C.M. 1106 also requires the convening authority to obtain the recommendation of the staff judge advocate or legal officer before taking action in a special court-martial that includes a bad-conduct discharge. In addition, it mandates service of the recommendation on counsel for the accused, and it includes a period of 10 days from receipt of the record of trial or the recommendation, whichever is later, for that counsel to comment on any matter in the recommendation. R.C.M. 1106(f)(5). Failure of counsel to comment on any matter in the recommendation waives later claims of error in the absence of plain error. R.C.M. 1106(f)(6).

### B. *The Smith Rationale*

In *Smith,* after an extensive review of the state of the law, a panel of this Court held that the completion of the post-trial recommendation by someone who is not a commissioned officer was plain error. The Court was not inclined to test this error for prejudice. It stated:

> We, of course, stand ready to do so [test for prejudice] in all events, but "when recommendations and the exercise of broad discretion are involved, appellate courts are limited in discerning what the outcome might have been in the absence of the error." *United States v. McCormick,* 34 M.J. 752, 755 (N.M.C.M.R.1992). We are particularly disinclined to consider on an individual basis the qualifications of someone who is not statutorily authorized to make the recommendation. In this case, we simply have no way of knowing what the qualifications of the chief petty officer who prepared and signed the recommendation are or what action the convening authority would have taken had he had the recommendation of a legal officer. On these points we simply will not speculate.

*Smith,* 34 M.J. at 898 (footnote omitted). *Smith* discussed the concept of plain error as detailed in *United States v. Lowry,* 33 M.J. 1035 (N.M.C.M.R.1991). *Lowry* held that plain error is an error that is obvious and substantial, and that seriously affects the fairness, integrity or public reputation of judicial proceedings, or requires judicial intervention to prevent a miscarriage of justice or to protect a fundamental right of the accused. *Id.* at 1037–38 (citing *United States v. Fisher,* 21 M.J. 327 (C.M.A.1986)). In *Fisher,* the U.S. Court of Military Appeals (renamed in 1994 the U.S. Court of Appeals for the Armed Forces) stated that the plain error doctrine is one to be used sparingly, and it noted that a *per se* approach to plain error is flawed. *Id.* at 328–29 (citing *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

### C. *The Olano Rule*

The year after *Smith* was decided, the Supreme Court issued its opinion in *Olano.* After the Ninth Circuit Court of Appeals had found plain error where an alternate juror sat in on jury deliberations in violation of Federal Rule of Criminal Procedure 24(c),[6] the Supreme Court reversed. It held that in determining plain error under Federal Rule of Criminal Procedure 52(b),[7] a conviction should not be overturned unless the following three factors are satisfied: 1) there is an error; 2) the error is plain, i.e., clear or obvious, and 3) the error must affect substantial rights. *Olano,* 507 U.S. at 732–35, 113 S.Ct. at 1776–78. The burden is on the defendant to establish the existence of prejudice. Moreover, even if all three elements are satisfied, the application of plain error under Rule 52(b) is permissive, and not mandatory, and it should be employed when a miscarriage of justice would otherwise result. *Id.* 507 U.S. at 735–36, 113 S.Ct. at 1778–79.

The Supreme Court also distinguished between waived and forfeited rights in *Olano.* Waived rights are those where there is an intentional relinquishment or abandonment of a known right, whereas forfeited rights are those where there is simply a failure to make the timely assertion of a right. *Id.* at

---

**6.** This rule states in pertinent part "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

**7.** This rule provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

733, 113 S.Ct. at 1777. If a forfeited error is plain and affects substantial rights, an appellate court has the authority to correct it, but it is not required to do so. Mere forfeiture does not extinguish an error under Rule 52(b).

Significant to us in deciding this case is that Justice O'Connor also explained in her lead opinion that there may be errors that are presumed prejudicial even if the defendant cannot show prejudice, although normally the defendant must make such a showing. *Id.* She did not address or discuss further what errors would be presumed prejudicial.

Moreover, there may be a "special category" of forfeited errors that can be corrected "regardless of their effect on the outcome" of the case. *Id.* 507 U.S. at 735, 113 S.Ct. at 1778.

■ To summarize, a finding of plain error requires the existence of a plain error that affects the substantial rights of an accused. An error may affect a substantial right where: 1) it actually prejudiced the accused, 2) the error was such that prejudice is presumed, or 3) the error affected a substantial right independent of its prejudicial impact—the "special category" of forfeited errors.

■ The U.S. Court of Military Appeals has compared Federal Rule of Criminal Procedure 52(b) with Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Toro,* 37 M.J. 313 (C.M.A.1993), *cert. denied,* 510 U.S. 1091, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). It has also applied the *Olano* analysis in military cases on various issues involving findings and sentencing. *See, e.g., United States v. Briggs,* 42 M.J. 367, 370 (1995); *United States v. Straight,* 42 M.J. 244, 247 (1995); *United States v. Czekala,* 42 M.J. 168, 170 (1995); *United States v. Greene,* 41 M.J. 57, 58 (C.M.A.1994). The Court will find plain error when there is a clear, obvious error which affects the substantial rights of the accused. Such an error need not necessarily result in overturning the conviction.

In examining the evolution of the plain error doctrine through *Atkinson, Fisher, Lowry, Smith, Olano* and *Toro,* we do not discern much change. What *Olano* did add were: 1) additional explanation regarding the permissive nature of the application of the plain error doctrine, 2) a discussion of the difference between waived and forfeited errors, and 3) that the determination whether an error affected substantial rights hinged on finding actual prejudice, presumed prejudice or a special category error.

### D. *The Importance of the Convening Authority's Action*

■ The convening authority's action on the results of a court-martial is a substantive exercise of power over the results of a court-martial. *United States v. Diaz,* 40 M.J. 335, 345 (C.M.A.1994). This action is a significant step in the military justice process that gives the convening authority unique and absolute control over the fate and future of convicted servicemembers. The convening authority, "in his sole discretion," may disapprove the guilty findings and the sentence, or any part thereof, for any or no reason, legal or otherwise. Article 60(c)(2) and (3), UCMJ, 10 U.S.C. § 860(c)(2) and (3). At this stage of the court-martial process, command prerogative governs. Only the convening authority may suspend all or part of a court-martial sentence. The military judge has no such authority, although he or she may recommend such action to the convening authority. The decision of the convening authority on what action to take on a case is of crucial importance to a convicted servicemember because it has long been recognized that the best hope for sentence relief after trial rests with the convening authority. *United States v. Spurlin,* 33 M.J. 443, 445 (C.M.A.1991); *United States v. Bono,* 26 M.J. 240, 243 n. 3 (C.M.A.1988); *United States v. Siders,* 15 M.J. 272 (C.M.A.1983); *United States v. Wilson,* 9 C.M.A. 223, 26 C.M.R. 3, 1958 WL 3280 (1958); *United States v. Cobe,* 41 M.J. 654, 655 (N.M.Ct.Crim.App.1994); *United States v. Jackson,* 37 M.J. 1045, 1046 (N.M.C.M.R.1993).[8] Military appellate courts, which lack clemency power, have tra-

---

**8.** At oral argument, the Government expressed its disagreement with this long-standing principle, suggesting instead that an accused's best hope for sentence relief rested elsewhere. We specifically reject this assertion.

ditionally been reluctant to second-guess the convening authority's exercise of this broad authority. *Cobe*, at 657; *United States v. McCormick*, 34 M.J. 752, 755 (N.M.C.M.R. 1992). We also will not speculate in this important area of command prerogative involving broad discretion as to what might have taken place in the absence of the error. *Craig*, 28 M.J. at 325.

### E. *The Importance of the Post-Trial Recommendation*

Because of the significance of the convening authority's action in the military justice system, the recommendation of the staff judge advocate or legal officer to the convening authority is also enormously important, for the better the convening authority is advised, the more fairly and justly will that authority exercise command discretion in acting on a case. *United States v. Boatner*, 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971). Complete and accurate advice in each case provides a convening authority with the guidance necessary to carry out the responsibilities Article 60(d), UCMJ, imposes. The recommendation is much more than a ministerial action or mechanical recitation of facts concerning the trial. Its heart and soul exist in the judgment of the drafter as to whether the adjudged sentence is appropriate and whether clemency is warranted. Therefore, when a sailor prepares and signs the recommendation instead of a judge advocate or commissioned legal officer, an error exists which we cannot usually find harmless because it involves the subjective judgment of a statutorily qualified officer. *Cf. United States v. Hill*, 27 M.J. 293 (C.M.A.1988). We believe that it is for these reasons that Congress mandated that the recommendation be done by a staff judge advocate or commissioned legal officer. This Court has also held that an accused has a military due process right to have the post-trial action of the convening authority guided by an R.C.M. 1106(a) recommendation prepared by a statutorily qualified officer. *United States v. Sparks*, 20 M.J. 985, 988 (N.M.C.M.R.1985). Judge advocates and commissioned officers

will almost always have more formal education than most sailors, and, by virtue of their status as commissioned officers, they are charged with unique responsibility and stricter accountability, and hold the special trust and confidence of the President. *United States v. Tedder*, 24 M.J. 176, 182 (C.M.A. 1987); *United States v. Scott*, 21 M.J. 345, 348 (C.M.A.1986); *United States v. Means*, 10 M.J. 162, 165–66 (C.M.A.1981).[9] We find no reason to legislate an exception by judicial fiat to Congressional judgment on the qualifications for those submitting post-trial recommendations.

### III. *CONCLUSION*

■ Due to the lack of comment or objection by the trial defense counsel to the error, we must engage in a plain error analysis. R.C.M. 1106(f)(6). There is no dispute that error exists or that it was clear and obvious. The question is whether the error affected the substantial rights of the appellant. Here, the appellant has not attempted to show any specific effect whatsoever. But in light of the unique importance of the post-trial action in the military justice system, the broad power that Congress has vested in the convening authority, and the related importance of the recommendation, we hold that the submission of a post-trial recommendation under Article 60(d), UCMJ, by a sailor and not a judge advocate or qualified legal officer, is generally an error that presumptively affects the substantial rights of a military accused without a showing of prejudice. *Olano*, at 736, 737, 113 S.Ct. at 1778–79, 1779–80; *cf. United States v. Clear*, 34 M.J. 129, 132 (C.M.A.1992) (finding that "generally it will be plain error" for a staff judge advocate to neglect to call the recommendation for clemency of the trial judge to the attention of the convening authority). We do not hold that such an error mandates *per se* reversal in every instance.

■ In addition, we also conclude that such an error will generally fall within the

---

9. As stated in *Smith*, we do not wish to demean the important role of enlisted personnel and civilian paralegals in the military justice system.

34 M.J. at 898 n. 5. The system could not function without them. But the functions they may perform are not limitless.

"special category" of forfeited errors [10] mentioned in *Olano* within the military law context that can be corrected regardless of their effect on the outcome. *Cf. United States v. Thompson*, 37 M.J. 1023 (A.C.M.R.1993) (holding prosecutor's racial comments during argument as a "special category" and therefore constituting plain error under *Olano* ). The unique nature of the review process in military law which affords military accuseds broad rights to clemency consideration by the convening authority logically dictates such a finding.

■ Having found plain error, we must next determine whether to grant relief. Such relief is appropriate here because this error seriously affects the fairness, integrity and public reputation of the proceedings. The prospect that a sailor would attempt to fulfill the responsibility that by statute is vested in a staff judge advocate or commissioned legal officer strikes at the core of the integrity and reputation of military justice in the naval service. We are not aware that any of the other services have ever experienced such a problem. The fact that this keeps recurring in the Navy [11] detracts from the reputation of post-trial case processing in our service. Also, every appellant in the naval service should be able to expect that as a matter of fairness, his or her case will be reviewed by and have a post-trial recommendation from a statutorily qualified officer. The plain language of the UCMJ leads to no other result. Fairness is not fostered or enhanced by advising some servicemembers that their case will receive a post-trial recommendation from a sailor, while most others obtain the review of a staff judge advocate or qualified legal officer. We conclude that the fairness, integrity and reputation of the system are therefore affected, and it is appropriate for us to take corrective action.

As a final matter, we note that errors in the area of post-trial processing of courtsmartial have continued to make up a substantial portion of the appellate litigation before this Court.[12] In this regard, we believe it would be wise to heed the words of Judge (now Chief Judge) Cox in his concurring opinion in *United States v. Moseley*, 35 M.J. 481, 485 (C.M.A.1992), regarding our responsibility to correct post-trial processing errors:

It seems to me that these errors are easily correctable at the time of initial review by the Courts of Military Review, either by immediately remanding the case to the convening authority to have him re-do it correctly or by taking affirmative action at the Court of Military Review to correct the error. All this Court is doing by remanding the case is correcting an administrative error. Perhaps the dissent is right and nothing good will happen for appellant as a result of the remand, but one thing is certain: the record will be complete and the rules will be followed.

## IV. *DECISION*

Accordingly, we answer the specified issue in the negative. The action of the convening authority dated 15 May 1995 is set aside. The record is returned to the Judge Advocate General for transmission to the convening authority for a staff judge advocate or legal officer's recommendation and a new convening authority's action. Compliance with R.C.M. 1106(f) is directed.

Chief Judge DOMBROSKI, Senior Judge McLAUGHLIN, Senior Judge CLARK and Judge LUCAS concur.

Judges OLIVER and WYNNE did not participate.

Senior Judge DeCICCO took final action on this case prior to his departure.

KEATING, Senior Judge (dissenting):

By focusing solely on the military status of the person who prepared the staff judge advocate's (SJA) recommendation, instead of the content of the recommendation, the majority perpetuates the fundamental flaw of

---

**10.** The waiver rule in the military incorporates both forfeiture and waiver. *Toro.*

**11.** Over the past few years, this Court has returned several other cases because of this error.

**12.** *See United States v. Ruiz*, 30 M.J. 867, 870 (N.M.C.M.R.1990).

the *Smith* decision. In the *Smith* Court's view, an otherwise correctly prepared recommendation (presumably even one that recommends action favorable to the accused), and to which counsel for the accused had no objection, invalidates the action of the convening authority if the person who signed the recommendation was not a commissioned officer.

This Court has previously held that an action taken by a convening authority *without* the advice of a staff judge advocate or legal officer, is erroneous but not null and void. *United States v. Dunbar*, 28 M.J. 972 (N.M.C.M.R.1989), *aff'd on other grounds*, 31 M.J. 70 (C.M.A.1990). Furthermore, if the error was procedural rather than substantive and does not materially prejudice the rights of the appellant, the error is harmless. *United States v. Murphy*, 26 M.J. 658, 659 (N.M.C.M.R.1988).

Yet, the majority now would invalidate the convening authority's action because, as the *Smith* Court said, when "recommendation and the exercise of broad discretion are involved," a reviewing court should not speculate as to the qualifications of one not *statutorily authorized* to make the recommendation. *United States v. Smith*, 34 M.J. 894 (N.M.C.M.R.1992).

The SJA recommendation does not exist for its own sake but to assist the convening authority in deciding what action to take on the sentence in the exercise of command prerogative. R.C.M. 1106(d)(1). As such, the recommendation is unalterably a preliminary requirement like the pretrial advice required by Article 34, UCMJ. Such advice can involve complex legal questions, yet failure to obtain such advice is an error that if not objected to is waived unless there is actual prejudice to the accused. *United States v. Murray*, 25 M.J. 445, 449 (C.M.A. 1988). I would apply the same legal principles to the SJA recommendation.

In this case, the SJA recommendation included an error as to the pleas, failed to indicate that appellant had earned a deployment ribbon, and identified appellant's clemency petition as having been submitted by the defense counsel. These types of error are not uncommon, and, absent plain error,

are waived by failure of counsel to object. By focusing on the military status of the preparer, the Court has made the form of the SJA recommendation more important than its content.

Furthermore, while the Court properly recognizes the significance of the convening authority's *action*, it disregards the experience and judgment of the senior officer who *takes* the action merely because a junior officer did not sign the recommendation. Convening authorities are usually more senior officers with command experience. Given reasonably accurate factual information, convening authorities are, in my view, fully capable of determining whether a sentence should be reduced as a matter of command prerogative.

I also disagree with the majority's application of the Supreme Court's decision in *Olano*. The majority has found a readily available way to side-step the rigorous four-prong *Olano* test ordinarily used to determine when an appellate court can and should correct a forfeited error. The Court has simply determined that lack of statutory authorization is the kind of error that does not require a showing of prejudice but, instead, falls within a "special category" that can be corrected regardless of its effect on the outcome.

Implied by the majority's decision is the recognition that no specific prejudice can be shown and that, if the test for unfair prejudicial impact required by *Olano* were applied, the error would be forfeited by the failure of defense counsel to object. With this implicit conclusion I agree fully. What I do not agree with is the underlying assumption that this Court is free to depart from the requirements of *Olano* by simply declaring them not applicable to a particular type of error. I believe something more is required. A comparison of the following two cases suggests what that something may be.

An approach similar to that taken by the majority in this case was taken by the U.S. Army Court of Criminal Appeals in a case that involved racial remarks in a prosecutor's summation. That court held that such remarks "affect substantial rights" and thus rise to the level of plain error, even without a

showing of specific prejudice, because the appellant has a substantial and fundamental right to a trial free of the improper consideration of race. *United States v. Thompson,* 37 M.J. 1023, 1027 (A.C.M.R.1993). Four judges dissented arguing that: (1) the majority erred in finding the case to be an exception to the general rule in *Olano,* (2) there was no prejudice in the judge only trial, and (3) it is bad policy to encourage defense counsel to remain silent when errors occur at trial that could prejudice their clients.

A Federal Circuit Court of Appeals has also used the "special category" exception to satisfy *Olano's* third prong. *United States v. David,* 83 F.3d 638 (4th Cir.1996). In that case, however, the court relied on Supreme Court precedent to support its holding. There, the court held that since, under Supreme Court precedent, failure to instruct on an element of a crime is an error not subject to harmless error analysis it necessarily "affect[s] substantial rights." *David,* 83 F.3d at 647. The court relied on *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which held that a constitutionally deficient reasonable doubt instruction is not subject to harmless error analysis.

In *Sullivan,* the court held such error to be in the same category as total deprivation of the right to counsel, trial by a biased judge, and denial of the right to self-representation. *Sullivan,* 508 U.S. at 279, 113 S.Ct. at 2081–82. The *Sullivan* court also distinguished between "structural defects" that defy analysis by "harmless error standards" and errors that occur during presentation of the case to the jury and may therefore be quantitatively assessed in the context of other evidence presented. The error was found to deny a basic protection "without which a criminal trial cannot reliably serve its function." *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2083 (citation omitted).

I believe military appellate courts also must rely on Supreme Court precedent to determine, under *Olano,* when an error is such that a showing of specific prejudice is not required or the error falls within the "special category" that can be corrected regardless of its effect on the outcome. I would apply the *Sullivan* standard by analo-

gy to post-trial processing errors and hold that *Olano* applies unless the appellant was denied a basic protection without which a convening authority's action cannot reliably serve its function. Under our holdings in *Dunbar* and *Murphy* and consistent with the legal principles established by our superior court in *Murray,* the answer is clearly that he was not.

Accordingly, I respectfully dissent.