UNITED STATES, Appellant,

v.

Robert L. FINSTER, Master-at-Arms Second Class, U.S. Navy, Appellee.

No. 98–5032.

Crim.App. No. 97 1882.

U.S. Court of Appeals for the Armed Forces.

Argued Feb. 10, 1999.

Decided July 30, 1999.

EFFRON, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN and GIERKE, JJ., joined. COX, C.J., filed a concurring opinion. CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Lieutenant James E. Grimes,* JAGC, USNR (argued); *Colonel K.M. Sandkuhler,* USMC, *Commander D.H. Myers,* JAGC, USN, and *Commander E.E. Irvin,* JAGC, USN (on brief).

For Appellee: *Lieutenant Commander R.C. Klant,* JAGC, USN (argued).

Amicus Curiae Urging Reversal: *Captain Steven D. Dubriske* (argued); *Colonel Anthony P. Dattilo* and *Major Ronald A. Rodgers* (on brief)—For Appellate Government Division, USAF.

Judge EFFRON delivered the opinion of the Court.

Pursuant to his pleas, appellee was convicted by a special court-martial before a military judge alone, of attempting to sell government property, conspiracy to commit larceny of government property, suffering wrongful disposition of government property, larceny of government property, and housebreaking, in violation of Articles 80, 81, 108, 121, and 130, Uniform Code of Military Justice, 10 USC §§ 880, 881, 908, 921, and 930, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $600.00 pay per month for 3 months, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

■ In an unpublished opinion, the Court of Criminal Appeals (one judge dissenting) set aside the convening authority's action. The convening authority, instead of following the requirement in Article 60(d), UCMJ, 10 USC § 860(d)(1983), that he obtain and consider the written recommendation of his staff judge advocate (SJA) or legal officer, had acted on the basis of a recommendation prepared by an enlisted person who was not qualified to act as an SJA or legal officer.*

The Judge Advocate General certified the case to this Court and asked us to review the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED WHEN IT RELIED UPON ITS EARLIER DECISION IN *UNITED STATES V. CUNNINGHAM*, 44 M.J. 758 (N.M.Ct.Crim.App.1996) IN FINDING THAT PLAIN ERROR CAN EXIST WITHOUT A SHOWING OF PREJUDICE BY THE APPELLANT.

I

■ One of the distinguishing features of the military justice system is the broad authority of the commander who convened a court-martial to modify the findings and sentence adjudged at trial. Although frequently exercised as a clemency power, the com-

mander has unfettered discretion to modify the findings and sentence for any reason—without having to state a reason—so long as there is no increase in severity. *See United States v. Russo*, 11 USCMA 352, 29 CMR 168 (1960). This power dates from the earliest Articles of War and Articles for the Government of the Navy. *See* Article of War 47 (1917), reprinted in Manual for Courts–Martial, U.S. Army, 1917, at 316; Art. 54(a), Articles for the Government of the Navy (1926), reprinted in Naval Courts and Boards, 1937, at 468; *see also* Art. 89, Articles for the Government of the Armies of the United States, 2 Stat. 359 (1806), reprinted in W. Winthrop, Military Law and Precedents 984 (2d ed. 1920 Reprint); Art. 49, Act for the Government of the Navy, 1 Stat. 709 (1799). It is based upon the responsibility of a military commander for the state of discipline and justice in the command.

Congress has insisted that the convening authority, prior to acting on the record of any general court-martial or any special court-martial in which the sentence includes a bad-conduct discharge, "shall obtain and consider the written recommendation of his staff judge advocate or legal officer." Art. 60(d); *see* RCM 1106, Manual for Courts–Martial, United States (1998 edition). Congress underscored the critical role of the SJA in the post-trial process by establishing criteria that disqualify a person from acting as an SJA in designated situations. Art. 6(c), UCMJ, 10 USC § 806(c). Likewise, our cases have emphasized the importance of the SJA recommendation by granting relief in cases in which the SJA was disqualified because of conflicting interests. *See United States v. Lynch*, 39 MJ 223 (CMA 1994); *United States v. Rice*, 33 MJ 451 (CMA 1991); *United States v. Engle*, 1 MJ 387 (CMA 1976).

When Congress streamlined the post-trial process in the Military Justice Act of 1983, Pub.L. No. 98–209, 97 Stat. 1396–97, by eliminating the need for a detailed post-trial legal analysis of the case by the SJA, the legisla-

---

* *See* Art. 1(12), UCMJ, 10 USC § 801(12) ("The term 'legal officer' means any commissioned offi-

cer ... designated to perform legal duties for a command.")

tion retained the requirement for an SJA recommendation prior to action by the convening authority. *See* S.Rep. No. 53, 98th Cong., 1st Sess. 7 (1983). During hearings before a subcommittee of the Senate Armed Services Committee, the General Counsel of the Department of Defense, in response to a question about what role would be played by the SJA under the new legislation, stated:

> The staff judge advocate, as the convening authority's senior advisor on military justice matters, is the person best qualified to make a recommendation to the convening authority as to how he should exercise his powers.

*Hearings on S. 2521 Before the Subcomm. on Manpower and Personnel of the Senate Armed Services Comm.,* 97th Cong., 2d Sess. 87 (1982) (response by Mr. Taft to question from Senator Exon). In its report on the legislation, the Committee stated that the SJA not only would compile designated materials, but would exercise significant "discretion" as to the types of additional matters that should be brought to the convening authority's attention. Further, the SJA would "include a specific recommendation as to the sentence, along with any appropriate recommendations as to the findings." Emphasizing the importance of the post-trial recommendation, the Committee observed that the post-trial recommendation would be provided by "the convening authority's principal advisor on military justice matters." S.Rep. No. 53, *supra* at 20; *accord* H.R.Rep. No. 549, 98th Cong., 1st Sess. 15 (1983).

The court below reflected these considerations in its en banc decision in *United States v. Cunningham,* 44 MJ 758 (1996), where it noted:

> Because of the significance of the convening authority's action in the military justice system, the recommendation of the staff judge advocate or legal officer to the convening authority is also enormously important, for the better the convening authority is advised, the more fairly and justly will that authority exercise command discretion in acting on a case. *United*

*States v. Boatner,* 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971).

The court added:

> Complete and accurate advice in each case provides a convening authority with the guidance necessary to carry out the responsibilities Article 60(d), UCMJ, imposes. The recommendation is much more than a ministerial action or mechanical recitation of facts concerning the trial. Its heart and soul exist in the judgment of the drafter as to whether the adjudged sentence is appropriate and whether clemency is warranted.

The court further observed that the policy requiring preparation of the recommendation by judge advocates or legal officers reflected not only the "formal education" of such officers, but also the fact that, "by virtue of their status as commissioned officers, they are charged with unique responsibility and stricter accountability [than enlisted personnel], and hold the special trust and confidence of the President." 44 MJ at 763.

## II

The recommendation to the convening authority in the present case was not prepared by an SJA or legal officer, but by Machinist's Mate Chief Petty Officer R. Both parties agree that such an enlisted person was not qualified under the statute to provide a post-trial recommendation to the convening authority. The Government suggests in its brief that appellee, by not objecting to the post-trial recommendation, waived any objection to its preparation by a person not qualified to serve as an SJA or legal officer.

The certified issue asks whether the court below erred by "finding that plain error can exist without a showing of prejudice by the appellant." In the absence of objection, we analyze a claim of error under the plain error standard of *United States v. Powell,* 49 MJ 460, 463, 465 (1998); that is, whether there was "error"; whether it was "plain"; and whether it materially prejudiced a substantial right of the accused. Art. 59(a), UCMJ, 10 USC § 859(a).

In the present case, all criteria are met. The preparation of the post-trial rec-

ommendation by an enlisted person constituted error under Article 60(d). Given the use in Article 60(d) of the well-understood terms "staff judge advocate" and "legal officer," the error in obtaining a recommendation from a person who did not meet the statutory criteria was "plain." In light of the critical role assigned by Congress to the SJA or legal officer in advising the convening authority in that officer's exercise of discretion, the failure to obtain a recommendation from a qualified person affected the substantial rights of the accused. In the present case, where the accused submitted clemency materials to the convening authority, the convening authority's reliance on a recommendation from an unqualified person materially prejudiced the right of the accused to have his submission considered by a qualified SJA or legal officer prior to the convening authority's action, particularly in view of the low threshold for a showing of prejudice with respect to post-trial recommendation matters. See United States v. Wheelus, 49 MJ 283, 289 (1998). We need not address at this time whether prejudicial plain error could be found in another case absent identification of specific matter that would have been considered by the convening authority, such as a post-trial submission by the accused or presentation of similar matter during the sentencing proceeding at trial.

The certified issue asks whether the court below erred "in finding that plain error can exist without a showing of prejudice by the appellant." We answer that question in the negative. The Court of Criminal Appeals may address prejudicial errors on its own motion and is not limited to the matters, if any, discussed in appellee's submission to that court. We note that under Article 66(c), UCMJ, 10 USC § 866(c) (1994), the Courts of Criminal Appeals "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Although the Courts of Criminal Appeals in appropriate cases may rely on the failure of the accused to identify prejudicial error as a basis for denying relief, it is well established that Article 66(c) establishes an affirmative obligation on those tribunals to review the record and reach their own independent conclusion as to whether the findings and sentence should be affirmed. See United States v. May, 47 MJ 478 (1998); United States v. Baker, 28 MJ 121 (CMA 1989); United States v. Turner, 25 MJ 324 (CMA 1987); United States v. Jones, 1 USCMA 302, 3 CMR 36 (1952). Nothing in either Article 66(c) or Article 59(a) precludes the Courts of Criminal Appeals from identifying prejudicial error without regard to the nature or quality of an accused's submission on appeal.

In the present case, the prejudicial impact of the error was manifest, so the court's order for a new post-trial action falls well within the broad discretion of the Courts of Criminal Appeals to determine "whether an error is harmless, whether corrective action should be taken by the Court of Criminal Appeals, or whether the case should be returned to the convening authority for new action." United States v. Cook, 46 MJ 37, 39 (1997).

The Court of Criminal Appeals addressed the prejudicial impact of the error in this case by citing its decision in Cunningham, which stated that this type of "error seriously affects the fairness, integrity and public reputation of the proceedings." The Cunningham opinion noted that use of an unqualified person

to fulfill the responsibility that by statute is vested in a staff judge advocate or commissioned legal officer strikes at the core of the integrity and reputation of military justice in the naval service.... [E]very appellant in the naval service should be able to expect that as a matter of fairness, his or her case will be reviewed by and have a post-trial recommendation from a statutorily qualified officer.

44 MJ at 764. In view of such a fundamental flaw in the post-trial process, the court correctly returned the present case for a new SJA recommendation and convening authority's action.

The decision of the Court of Criminal Appeals is consistent with the position we artic-

ulated in *United States v. Lee,* 50 MJ 296, 298 (1999), where we noted:

> Errors in posttrial processing reflect defective staff work. Such errors are fundamentally different from the errors resulting from the intense, dynamic atmosphere of a trial. We do not accept the notion that commanders are well served by staff work that is incomplete or inaccurate.

Likewise, we do not accept the notion that commanders are well served when their staff work is assigned to statutorily unqualified personnel. In *Lee,* we stated that

> records that come to the Courts of Criminal Appeals with defective staff work are simply not ready for review. When such errors are brought to ... the attention of the Court of Criminal Appeals, they should be returned promptly to the convening authority for preparation of a new SJA recommendation and action.

*Id.* In the present case, the Court of Criminal Appeals acted in accordance with the Code and applicable case law.

### III

The decision of the United States Navy–Marine Corps Court of Criminal Appeals ordering a new convening authority's action is affirmed.

COX, Chief Judge (concurring):

I agree with my colleague's opinion. I write only to make a small point.

In my judgment every appellate court, indeed trial courts, do not have to accept incomplete or sloppy work. I would never require a showing of "prejudice" before sending a case back to a convening authority to fix administrative errors in the record. For example, if a convening authority forgets to sign the document approving the sentence, does that mean we would have to allow the accused to go free or be retried? Personally, I don't think so. Just fix it.

CRAWFORD, Judge (dissenting):

I dissent because I disagree with the majority's analysis of whether the error prejudiced a substantial right of appellee. Based on the charged offenses, there is no likeli-

hood that the error affected his substantial rights. *United States v. Powell,* 49 MJ 460 (1998); *see also United States v. Johnson–Saunders,* 48 MJ 74, 75–76 (1998) (Crawford, J., dissenting); *United States v. Edwards,* 45 MJ 114, 117–18 (1996) (Crawford, J., dissenting). This is not a case where we should presume prejudice. To say that any reasonable convening authority might suspend or set aside the discharge or reduce confinement or forfeitures only if the convening authority is advised by a statutorily-qualified person under these circumstances ignores the totality of the evidence surrounding appellee's offenses, as well as the procedural disposition of the case. The court below does not have the authority simply to order a new action by presuming that error affected the substantial rights of the defendant. *See United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

Appellate review is hindered by incomplete or sloppy trial and post-trial work, and an appellate court should not be forced to accept such a record. However, there is a difference between an exercise of supervisory authority and a finding of plain error where no showing of prejudice has been made. *See United States v. Cook,* 46 MJ 37, 39 (1997), citing *United States v. Griffin,* 8 USCMA 206, 207, 24 CMR 16, 17 (1957). *Cf. United States v. Smith,* 36 MJ 455, 457 (CMA 1993)(this Court exercised "supervisory jurisdiction"). In *Griffin,* we said, "Sometimes error can best be cured by returning the case to the level of proceedings at which the error occurred; in other instances, the reviewing authority, by the exercise of its own powers, can effectively eliminate the harmful consequences of the error in earlier proceedings...." 8 USCMA at 207, 24 CMR at 17. The precedents set by following one course rather than the other may vary greatly, even where the ultimate outcomes seem similar.

While the majority focuses on the nature of the right affected and characterizes this as "a fundamental flaw in the post-trial process," 51 MJ at 188, it does not recognize that where there is a mistake in the SJA's recommendation—either in the substance of the recommendation or in the author—the

defense counsel and the accused have a chance to comment on legal errors in the recommendation. Once a comment is made, the SJA may simply agree or not agree with the comment. RCM 1106(d)(4); *see, e.g., United States v. Thompson,* 26 MJ 512 (ACMR), *pet. denied,* 27 MJ 403 (1988). Either way, an accused's comments are before the convening authority. Here, defense counsel, in submitting an extensive clemency package to the convening authority, did not object to the author of the SJA recommendation though his inadequate rank was obvious. This failure to object or comment is evidence that there was no impact on a substantial right. Further, appellee has failed to make any showing to the contrary.

As we indicated in *United States v. Reist,* 50 MJ 108 (1999), errors that are known at the time of pretrial and trial proceedings are waived where not challenged contemporaneously. However, where the error is not known, such as in *United States v. Dinges,* 49 MJ 232 (1998) and *United States v. Edwards, supra,* it is not waived. But our cases have been anything but clear on waiver. *See* 2 F. Gilligan & F. Lederer, Court–Martial Procedure § 24–64.20 (1991 & 1998 Supp.).

For all of the foregoing reasons, I dissent.