**UNITED STATES**

v.

**Airman Basic Travis A. GUTIERREZ,**
**United States Air Force**

**ACM 35661**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 6 February 2003
by GCM convened at Minot Air
Force Base, North Dakota.

19 December 2005

Appellate Counsel for Appellant: Major
Terry L. McElyea and Major Diane M. Pas-
key.

Appellate Counsel for the United States: Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs and Captain C. Taylor Smith.

Before ORR, JOHNSON, and JACOBSON, Appellate Military Judges

## OPINION OF THE COURT

JACOBSON, Judge:

The appellant, pursuant to his pleas, was convicted of dereliction of duty, wrongful possession, use, distribution, and introduction of marijuana, and negligent discharge of a firearm, in violation of Articles 92, 112a, and 134, UCMJ, 10 U.S.C. §§ 892, 912a, 934. A general court-martial composed of a military judge sitting alone sentenced him to a bad-conduct discharge and confinement for 7 months. The convening authority approved the findings and sentence as adjudged. On appeal, the appellant alleges that the staff judge advocate's (SJA) failure to provide the convening authority with certain post-action information was error. We agree, and order corrective action.

### Background

During the providency inquiry into his guilty pleas, the appellant admitted to bringing a loaded firearm to his on-base dormitory and accidentally shooting a hole through the wall in his room. He also explained how he purchased marijuana on several occasions, both for himself and to resell to a friend, smoked marijuana numerous times, and brought his marijuana into the confines of Minot Air Force Base, North Dakota. After the military judge accepted the guilty plea, the appellant, through counsel and after receiving the appropriate cautions from the military judge, requested a bad-conduct discharge (BCD) in lieu of confinement. The appellant was subsequently sentenced to a bad-conduct discharge and confinement for 7 months.

On 22 March 2003, the SJA completed his staff judge advocate recommendation (SJAR); on 3 April 2003, the appellant filed clemency matters; and on 8 April 2003, the addendum to the SJAR was filed. On 9 April 2003, after considering all matters, including a letter from the appellant's girlfriend, CG, the convening authority approved the sentence and ordered the confinement executed. However, the convening authority also wrote the following note on the first page of the SJAR:

I am almost convinced to change this based solely on the letter from the young lady that he has befriended. However, he had a 5-month spree of using and selling dope and he should pay—I will, if the defense lawyer can convince me at the end of his sentence that he is going to grow up [and] make a commitment to [CG] and her children I will reconsider the BCD.

Because of this comment, the convening authority's SJA retained the record, rather than forwarding it for appellate review, during the period of the appellant's confinement. By retaining the record, the convening authority also retained the right to recall and modify the action, as long as the modification would not have resulted in an action less favorable to the accused. Rule for Courts-Martial (R.C.M.) 1107(f)(2). The record does not show exactly when the appellant was released from confinement, but apparently it was sometime prior to 11 August 2003. On that date, the convening authority's SJA contacted the appellant's trial defense counsel and informed him, apparently for the first time, about the convening authority's comment. Trial defense counsel was given five days to contact his client and submit matters to the convening authority regarding the issue of the appellant's commitment to CG and her children. Trial defense counsel could not locate his client, due largely to the fact that the appellant did not write a forwarding address on his Air Force Form (AF Form) 304.[1] Trial defense counsel did not request an extension of time to locate his client; he simply informed the SJA that he could not

1. The AF Form 304 is entitled "Request for Appellate Defense Counsel" and contains a section in which the appellant was instructed to write an address to be used for "future correspondence." Appellant left this section blank and apparently provided his trial defense counsel with no forwarding address, despite being advised of his post-trial and appellate rights (and responsibilities) by the military judge and counsel. (App. Ex. V).

locate the appellant. The convening authority's SJA informed the convening authority that the appellant could not be readily contacted and later attached a memorandum to the record stating the following:

This afternoon, 18 August 2003, the general court-martial convening authority was briefed on the status of [the appellant's] case. After considering his initial decision, the record, and the post-clemency processing actions detailed in my other memorandum for record dated today,[2] Lieutenant General Bruce Carlson decided that the interests of justice had been served and no modification of his earlier action was warranted.

On appeal, the appellant does not allege error in the SJAR, addendum, or in the convening authority's action. Instead, he claims that the SJA failed to provide proper advice to the convening authority regarding this post-action matter.

### Standard of Review

■ The standard of review for determining whether post-trial processing was properly completed is de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004).

### Discussion

■ The issue before this Court is whether the SJA's failure to provide the convening authority with requested post-action information was error and, if so, whether the error prejudiced the appellant's opportunity to receive clemency from the convening authority. Thus, this case is different from the often-encountered situation where error in either the SJAR or the addendum to the SJAR is alleged. In this case, the question becomes whether the failure to fully address the convening authority's concerns, as expressed in a handwritten note on an otherwise proper SJAR, somehow invalidates the action. We believe that it does.

■ Action to be taken on the sentence of a case is within the sole discretion of the convening authority. Article 60(c)(1) and (2), UCMJ, 10 U.S.C. §§ 860(c)(1), 860(c)(2); R.C.M. 1107(b)(1). "The convening authority may for any or no reason disapprove a legal sentence in whole or in part, mitigate the sentence, and change a punishment to one of a different nature as long as the severity of the punishment is not increased." R.C.M. 1107(d)(1). Prior to taking action, the convening authority is required to consider the result of trial, the SJAR, and written matters submitted by the accused. R.C.M. 1107(b)(3). After taking action, the convening authority *may* recall and modify his action "at any time prior to forwarding the record for review, as long as the modification does not result in action less favorable to the accused than the earlier action." R.C.M. 1107(f)(2). As our superior court has instructed, "[o]ne of the distinguishing features of the military justice system is the broad authority of the commander who convened a court-martial to modify the findings and sentence adjudged at trial. Although frequently exercised as a clemency power, the commander has unfettered discretion to modify the findings and sentence for any reason—without having to state a reason—so long as there is no increase in severity." *United States v. Finster*, 51 M.J. 185, 186, (C.A.A.F. 1999) (citing *United States v. Russo*, 29 C.M.R. 168, 174 (C.M.A. 1960)).

The appellant has not cited, nor have we found, any authority or precedent that would *require* the convening authority to modify his action under the present circumstances. However, on the SJAR, the convening authority indicated he would reconsider the BCD if, at the end of the appellant's sentence, his counsel could convince the convening authority that the appellant "is going to grow up [and] make a commitment to [CG] and her children." On the day the convening authority informed his SJA that he desired additional information, and indeed for several months following that day, the appellant was in military custody as a result of his adjudged confinement. If the legal office had informed the appellant's trial defense

---

2. The earlier memorandum of record documented the SJA's interaction with trial defense counsel regarding attempts to contact the appellant.

counsel of the convening authority's request in a timely manner, the appellant may have been contacted and the convening authority's concerns addressed. In support of this contention we note that trial defense counsel obviously worked closely with the appellant during his confinement in compiling a clemency package that "almost convinced" the convening authority to disapprove the BCD. The fact that the legal office, which had in its possession an AF Form 304 with no forwarding address, chose to wait until the appellant had been released from confinement before informing trial defense counsel of the convening authority's query strikes us as fundamentally unfair to both the appellant *and* the convening authority. Although the appellant certainly shares some of the blame for not providing a forwarding address, the legal office could have easily rectified the problem by simply notifying the appellant's counsel of the convening authority's statement in a timely manner.

■ In the clemency process, the convening authority, in his sole discretion, may disapprove the guilty findings and the sentence, or any part thereof, for any or no reason, legal or otherwise. Article 60(c)(1) and (2), UCMJ. In view of the highly discretionary nature of the convening authority's action, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant 'makes some colorable showing of possible prejudice.'" *United States v. Wheelus,* 49 M.J. 283, 289 (C.A.A.F. 1998) (quoting *United States v. Chatman,* 46 M.J. 321, 323–24 (C.A.A.F. 1997)).

■ The convening authority asked for information in order to exercise his discretion in the appellant's case. The legal office acknowledged its understanding of the convening authority's request by retaining the rec-

ord, thereby keeping the matter within the convening authority's control. Nearly one year later, appellate defense counsel apparently had little trouble locating the appellant, at which time he was told of the convening authority's query. The appellant provided information indicating that he was, in fact, still committed to CG and her children.

### Conclusion

The appellant has established a colorable showing of prejudice in that he was not allowed to address the convening authority's request for information. As a matter of military due process, the appellant should have been given reasonable notice of the convening authority's concerns and an opportunity to provide further clemency matters in response. The legal office did not take the steps necessary to provide the convening authority with the information he requested in order to reconsider the adjudged bad-conduct discharge pursuant to his authority under R.C.M. 1107(f)(2). We will not speculate as to whether the requested information, if presented to the convening authority in a timely manner, would have caused him to modify the action.

The action of the convening authority is set aside. The record of trial is returned to The Judge Advocate General for remand to the convening authority for post-trial processing consistent with this opinion. Thereafter, Article 66(b), UCMJ, 10 U.S.C. § 866(b), will apply.