588

**UNITED STATES**

v.

**Airman Jason KERWIN, FR109–56–8189 United States Air Force**

**ACM 31794 (F REV).**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 15 June 1994.

Decided 6 Nov. 1996.

Appellate Counsel for Appellant: Colonel Jay L. Cohen and Captain Todi S. Carnes.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Lieutenant Colonel Michael J. Breslin, and Captain Libby A. Brown.

Before PEARSON, MORGAN, C. H., II, and MORGAN, J.H., Appellate Military Judges.

## UPON FURTHER REVIEW

## OPINION OF THE COURT

PEARSON, Senior Judge:

In a bench trial, appellant pled guilty to violating a lawful order by driving on base while his driving privileges were revoked; violating a regulation by possessing drug abuse paraphernalia; using and distributing steroids; and possessing steroids with the intent to distribute them. The military judge sentenced him to a bad-conduct discharge (BCD), 24 months confinement, forfeiture of $500 monthly pay for 24 months, and reduction to E-1. Today, we return the case for a third post-trial review and third convening authority action.

## THE FIRST APPEAL

In his original appeal, appellant argued: (1) the drug paraphernalia offense was improperly referred to trial; (2) the convening authority took action on the sentence before receiving his clemency materials; (3) the Staff Judge Advocate's Recommendation (SJAR) misled the convening authority concerning clemency options on the bad-conduct discharge; and (4) post-trial delay of one year between the convening authority's action and forwarding of the record on appeal warranted sentencing relief. Appellate government counsel conceded the record was unclear as to whether the convening authority improperly took action before receiving appellant's clemency materials. *See* R.C.M. 1107(b)(2), (b)(3)(A)(iii). Consequently, we returned the case for a new action, stating:

> Because of this disposition, we need not address the appellant's other assignments of error. However, we note that a new convening authority action gives the staff judge advocate an opportunity to reconsider the contents of his SJAR addendum in light of the appellant's arguments. We also invite the convening authority to consider whether the post-trial delay in this case warrants clemency.

*United States v. Kerwin,* ACM 31794, slip. op. at 3, 1995 WL 755297 (A.F.Ct.Crim.App. Nov. 30, 1995) (unpub.).

In a revised addendum to the SJAR, a new staff judge advocate (SJA) agreed that the drug paraphernalia offense was not properly referred to trial and recommended the new convening authority set it aside and dismiss it, which he did. The SJA also discussed the delay in forwarding the record for appellate review and recommended clemency by reducing the forfeiture, which the convening authority also did by shortening the term of forfeitures to 18 months. However, the SJA maintained that the remaining legal advice in the first addendum was correct, which brings us to round two in the appellate process.

## THE APPEAL, PART II

This time around, appellant renews his objection to the SJA's advice concerning the convening authority's options on the bad-conduct discharge and contends he did not receive sufficient relief for the post-trial delay. He also asserts two new defects in the new addendum and action: (1) the SJA did not sufficiently advise the convening authority on the difference between reassessing a sentence for legal error and clemency; and (2) the convening authority approved an illegal term of confinement. We agree the SJA's advice and the convening authority's action were flawed.

### Advice Concerning the BCD

■ The convening authority uses the SJAR and any addendum as an aid in determining what action to take on the sentence. Article 60(d), UCMJ, 10 U.S.C. § 860(d); R.C.M. 1107(b)(3)(A)(ii); R.C.M. 1106(d). Therefore, the SJA must provide correct information to the convening authority in these documents. Absent defense waiver or forfeiture (*see* R.C.M. 1106(f)(6)), erroneous advice on substantial matters of fact or law will invalidate the action when the error prejudices the accused. *See United States v. Reed*, 33 M.J. 98 (C.M.A.1991); *United States v. Dowell*, 15 M.J. 351 (C.M.A.1983); *see also United States v. Welker*, 44 M.J. 85 (1996); *United States v. Diaz*, 40 M.J. 335 (C.M.A.1994).

In his first post-trial clemency submission, appellant asked the convening authority to suspend his BCD and cut the confinement. He also submitted letters from several individuals who recommended a "general" discharge in lieu of the BCD. In an addendum to the SJAR, the SJA advised the convening authority that appellant's adjudged sentence was "just, fair and appropriate" and "despite the pleas of his friends, there is no authority or mechanism for giving the accused a 'general' discharge at this point—you must either approve his [BCD] or **direct retention in the Air Force**." (Emphasis added).

When we set aside the first action, appellant got a second chance to persuade the convening authority that the BCD was not appropriate. This time, however, he dropped the suspension argument and focused on the "general" discharge avenue. In a post-trial submission, appellant's counsel took exception to the SJA's advice in the first addendum that an "administrative discharge route was not available, when clearly it is." He asked the convening authority to "disapprove" the BCD and "initiate a notification-type administrative discharge" which would lead to a "general discharge."

In the new addendum in reply, the SJA pointed out that appellant's counsel believed an administrative discharge option was available without elaborating on the notification method counsel suggested. However, the SJA concluded, "A court-martial is not able to adjudge an administrative discharge and therefore, we still maintain that the advice [in the first addendum] was correct." Unfortunately, it wasn't.

■ We agree that a convening authority does not have authority to "convert" a punitive discharge into an administrative one; that authority rests with the service Secretary. R.C.M. 1206(b)(2). However, a convening authority does not "direct retention" of the accused in the Air Force by disapproving a punitive discharge. Instead, the accused may be processed for an administrative discharge which may result in less than an "honorable" discharge. Air Force Instruction 36–3208, *Administrative Separations of Airmen* (Oct. 1994) (in effect at time of the second action); Air Force Regulation 39–10, *Administrative Separations of Airmen* (Aug. 1991) (in effect at time of the first action). Consequently, the first and second addenda were both incorrect.

Turning to prejudice, the first addendum probably did not have an impact since appellant sought suspension of the discharge, not administrative processing. However, by the date of the second addendum, appellant switched to the administrative avenue after the suspension tack didn't work, and challenged the correctness of the SJA's legal advice that such an option wasn't available. The SJA provided wrong advice on this key part of appellant's plea for clemency.

As for the remedy, appellant asks us to disapprove the bad-conduct discharge for the

post-trial error as we did in *United States v. Cook*, 43 M.J. 829 (A.F.Ct.Crim.App.1996). Rule for Courts–Martial (R.C.M.) 1106(d)(6) authorizes us to take "corrective action" for errors in the SJAR "without returning the case for further action by a convening authority." *See United States v. Thompson*, 43 M.J. 703 (A.F.Ct.Crim.App.1995) (appellant requested relief from forfeitures in lieu of returning case for a new action), *pet. denied*, 44 M.J. 66 (1996). However, we believe the better course in this case is to return it for a new action.

Unlike the situation in *Cook*, the SJA did not ambush appellant with new information in the addendum without giving appellant the opportunity to be heard, or try to minimize the lifelong effects of a BCD. On the contrary, the SJA here served the new addendum on appellant, but made an error in his legal advice. Also, unlike *Cook*, we are not persuaded that the convening authority would give appellant a break on the discharge when appellant pled guilty to "selling" controlled drugs, violated an order, and already had an existing official record of misconduct before trial. Appellant is entitled to have a key aspect of his post-trial pitch for clemency decided on the correct legal advice—we will give him that opportunity with yet another post-trial review and action. *Reed*.

### Sentencing Relief for Trial Error Versus Sentence Appropriateness

■ An SJA must respond in the SJAR or addendum to any allegation of legal error an accused raises in the post-trial matters submitted under R.C.M. 1105. The SJA should state whether corrective action is necessary on the findings or sentence by at least stating "agreement or disagreement with the matters raised by the accused." The SJA does not have to set out any "analysis or rationale" for that position. R.C.M. 1106(d)(4). *See also United States v. Hill*, 27 M.J. 293 (C.M.A.1988).

■ However, if the SJA recommends relief for a legal error, the SJA must distinguish "between, on the one hand, curing any effect that the error may have had on the sentencing authority [sentence reassessment]

and, on the other, determining anew the appropriateness of the adjudged sentence." *Reed*, 33 M.J. at 100. In making that distinction, the SJA must keep in mind that "[g]enerally, an accused is entitled to be placed in the position he would have occupied if an error had not occurred." *Hill*, 27 M.J. at 296. Thus, the SJA's advice to the convening authority on what impact an error had on the adjudged sentence, if any, is totally separate from what sentence the convening authority should actually approve as a matter of command discretion, including clemency.

■ Here, the SJA failed to distinguished between the various sentencing concepts, to appellant's prejudice. After recommending dismissal of the drug paraphernalia offense, the SJA did not discuss the impact of that offense on the sentence except to recommend "clemency" and say, "I think it is fair to infer that the BCD was based on the steroid use and distribution, not paraphernalia possession." The only sentencing review the SJA discussed was our "invitation to the convening authority to consider whether the post-trial delay in this case warrants clemency."

Appellant had more at stake in the sentence than a BCD, and reducing a sentence to correct legal error is not the same as exercising clemency. *Cf. United States v. Peoples*, 29 M.J. 426 (C.M.A.1990) (determination of impact that trial error had on adjudged sentence and determination of appropriateness of the reassessed sentence is a two-step process). "Without guidance from his legal advisor as to the legal limitations on his task, the convening authority [was] acting in the dark." *Reed*, 33 M.J. at 100. Thus, the SJA erred in not discussing whether the dismissed offense had an impact on any aspect of appellant's sentence and in lumping sentencing relief for the legal error with clemency. The new addendum and action should correct this deficiency.

■ For future cases, we suggest an analytical framework that SJAs may use to correctly advise the convening authority on his or her responsibilities concerning the sentence. First, when the SJA recommends relief for a legal error, the SJA should advise the convening authority as to what sentence

**592**

the court-martial would probably have adjudged if the error had not occurred. In giving this advice, the SJA may only consider the evidence that was properly before the sentencing authority. *Peoples.*

If the accused raises the issue of clemency, the SJA should then advise the convening authority on whether clemency·is warranted when discussing the appropriateness of the reassessed sentence for the accused and the offenses. *See* R.C.M. 1107(d)(2). In giving this advice, the SJA is not restricted to the evidence properly before the court-martial, but may rely on information from outside the record of trial. However, if the SJA "considers matters adverse to the accused from outside the record, with knowledge of which the accused is not chargeable, the accused shall be notified and given an opportunity to rebut." R.C.M. 1107(b)(3)(B)(iii).

### *Term of Confinement*

 On December 4, 1995, a successor convening authority remitted appellant's unserved sentence to confinement effective December 14, 1995, which reduced appellant's total term of confinement from 24 to 18 months. Appellant referenced this act of "special clemency" in his R.C.M. 1105 submission but apparently the new SJA did not pick up on it as the convening authority approved the entire 24 months of confinement in the new action. *See* R.C.M. 1108(a)–(b). However, we conclude appellant was not prejudiced by this administrative gaffe since the new action also stated that all confinement had been served. The third action should correct this error.

### *Post-Trial Delay in Forwarding the Record*

In August 1994, several months after appellant's trial, the noncommissioned officer (NCO) overseeing the military justice function at the SJA's office unexpectedly died. Office co-workers sorted through the NCO's office papers and effects, separating personal effects from government property. Somehow, appellant's record of trial ended up in a box of office supplies which was placed in a storage room, where it remained until appellant made several telephone calls about the status of his "appeal." In August 1995, the

SJA's staff found the record and forwarded it for appellate review.

Appellant claims the "clemency" which he supposedly received in the new action for this delay was "not, in reality, any relief at all" because he entered a "non-pay, 'appellate leave' status" on his release from confinement on December 14, 1995. Thus, appellant argues the Government was trying to "'giveth back' that which it had never taken away." Appellant makes a good point. However, we decline to answer this question until we have a proper convening authority action which will also give appellant an opportunity to fully document any prejudice or circumstances which would warrant appellate relief, including disapproval of the bad-conduct discharge. *See United States v. Jenkins,* 38 M.J. 287 (C.M.A.1993).

### CONCLUSION

The convening authority's action is set aside and the record of trial is returned once again for a new SJAR addendum and new action consistent with this opinion.

Judges MORGAN, C.H., II, and MORGAN, J.H. concur.