**UNITED STATES, Appellee,**

v.

**Sergeant Lamanous T. BONNER, United States Army, Appellant.**

**ARMY 20040196.**

U.S. Army Court of Criminal Appeals.

20 March 2007.

For Appellant: Lieutenant Colonel Kirsten V.C. Brunson, JA; Major Charles A. Kuhfahl, Jr., JA; Captain Danyele Jordan, JA (on brief).

For Appellee: Colonel John W. Miller II, JA; Lieutenant Colonel Michele B. Shields, JA; Major Paul T. Cygnarowicz, JA; Major Jay Eiche, JA (on brief).

Before MAHER, Senior Judge, SULLIVAN, and HOLDEN, Appellate Military Judges.

### OPINION OF THE COURT

SULLIVAN, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of rape, sodomy, and adultery in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934 [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority disapproved the findings of guilty regarding sodomy, dismissed the charge and its specification with prejudice, and approved the remaining findings of guilty. The convening authority reduced the sentence to confinement by two months, approved the remainder of the adjudged sentence, and waived automatic forfeitures for six months. This case is before us for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Appellant asserts, *inter alia*, the staff judge advocate (SJA) failed to advise the

convening authority properly on sentence reassessment after dismissal of a portion of the findings of guilty. We disagree. A reassessment of sentence in light of a legal error and a grant of clemency are distinctly different legal acts; therefore, the advice required for sentence reassessment in light of legal error is not required in conjunction with an act of clemency.

## Facts

On the night of 2 August 2003, after an evening of drinking and socializing, Private First Class (PFC) PB returned to her barracks room, across the hall from appellant's room. At appellant's invitation, PFC PB joined him in his room for a drink and conversation. Uncomfortable with appellant's remarks on her appearance, PFC PB left appellant's room, returned to her own, and changed into her sleepwear—elastic banded shorts and a tee shirt. Later, however, when another noncommissioned officer (NCO) knocked on the door and invited her to join him and appellant, PFC PB returned to appellant's room. After a few moments of talking while leaning against a desk, PFC PB accepted appellant's suggestion that she sit on the bed. Thereafter, appellant started kissing her, removed her underwear and shorts together, and began to perform oral sex on her. PFC PB declared "No, I can't do this" and tried to squirm and get away. She sat up but appellant pushed her down on the bed by her shoulders and inserted his penis into her vagina. She succeeded in pushing him off, after only a brief penetration without ejaculation, by bringing her knees up, getting her feet on the floor, and getting off the bed. She put on her shorts, grabbed her underwear and, although the other NCO pulled her towards him to kiss her, she got free. She ran from appellant's room to her own barracks room where she snatched up her cell phone, locked herself

into the bathroom and immediately began trying to telephone someone she felt she could trust. On her third try, she spoke to SGT R but he could not understand her because she was crying and hysterical.

In his recommendation to the convening authority under Rule for Courts–Martial [hereinafter R.C.M.] 1106, the SJA recommended the convening authority set aside the findings of guilty for sodomy and dismiss them with prejudice. The SJA gave no reason for his recommendation, and we will not speculate as to the basis. Although the SJA recommended dismissal of the sodomy and sentence reduction prior to appellant's submission under R.C.M. 1105, at no point did trial defense counsel make any allegation of legal error regarding the sodomy charge. The SJAR also advised: "In light of my recommendation that you dismiss Charge II and its specification, I further recommend that you lower the adjudged period of confinement" and approve, *inter alia,* confinement for only fifty-eight months of the five year adjudged sentence. Before this court, appellant contends the SJA failed to advise the convening authority properly "as to the appropriate legal standard to apply in reassessing the sentence in light of his disapproval of the sodomy charge."

## Law and Discussion

In this case, we deal not with sentence reassessment based on *legal* error but, instead, with sentence reduction after an act of *clemency* on the findings. Accordingly, the standards for reassessment do not apply.

▮▮ When a convening authority disapproves findings based on *legal* error, the SJA must provide advice on the responsibilities to reassess the sentence in light of the error and make a determination of sentence appropriateness under R.C.M. 1107(d)(2).[1] In

---

1. We find no evidence of a determination of possible legal error by the SJA in this case, nor do we see any basis that would support such a determination. Both *United States v. Marcum,* 60 M.J. 198 (C.A.A.F.2004)(holding that Constitutional challenges to Article 125, UCMJ based on *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) are decided on a case-by-case basis using a tripartite analysis) and *United States v. Stirewalt,* 60 M.J. 297, 304 (C.A.A.F.2004)(analysis under tripartite test con-

siders accused's "zone of autonomy and liberty interest" in light of established service regulations and military interest in good order and discipline) were decided well before the SJA prepared the addendum with his final recommendation on findings and sentence in this case. Given, *inter alia,* appellant's age, NCO and marital status, the presence of a third party, and barracks situs of the offense, it would have been clear to the SJA prior to action by the convening

such cases, the SJA must ensure the convening authority understands two separate but distinct responsibilities: first, to "cur[e] any effect that the error may have had on the sentencing authority," *United States v. Reed,* 33 M.J. 98, 100 (C.M.A.1991); and second, to "determin[e] anew the appropriateness of the adjudged sentence." *See United States v. Jones,* 39 M.J. 315, 317 (C.M.A.1994) (quoting *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986) (sentence "would have been at least of a certain magnitude")). The *Reed* rule, therefore, applies in cases involving legal error and the prejudice flowing from it. *Reed,* 33 M.J. at 99–100; *see United States v. Davis,* 48 M.J. 494, 495 (C.A.A.F.1998) (sentence reassessment involves ensuring "the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed").

■ Where there is no error, however, there is no obligation on the SJA to advise the convening authority on corrective action as to the sentence. An important distinction exists between sentence relief based on legal error and sentence relief as an act of clemency.[2] *See United States v. Kerwin,* 46 M.J. 588, 591 (A.F.Ct.Crim.App.1996), *pet. denied,* 48 M.J. 355 (C.A.A.F.1997)("the SJA's advice to the convening authority on what impact an error had on the adjudged sentence, if any, is totally separate from what sentence the convening authority should approve as a matter of command discretion, including clemency.").

"[C]lemency ... [is] an executive function reposed, in the first instance, in the convening authority." *United States v. Wheelus,* 49 M.J. 283, 288 (C.A.A.F.1998).

> One of the distinguishing features of the military justice system is the broad authority of the commander who convened a court-martial to modify the findings and sentence adjudged at trial. Although fre-

quently exercised as a clemency power, the commander has unfettered discretion to modify the findings and sentence for any reason—without having to state a reason— so long as there is no increase in severity.

*United States v. Scalo,* 60 M.J. 435, 436 (C.A.A.F.2005) (quoting *United States v. Finster,* 51 M.J. 185, 186 (C.A.A.F.1999)).

■ The language in the applicable R.C.M. leads us to conclude the convening authority's *clemency* decision is not subject to judicial review. *Compare* R.C.M. 1101(c)(3) (convening authority's action on request to defer punishment "subject to judicial review only for an abuse of discretion") *with* R.C.M. 1107(b)(1) (action to be taken on findings and sentence within sole discretion of the convening authority); *see also Wheelus,* 49 M.J. at 288 (appellate courts do not have clemency powers). Hence, the convening authority is not required to adhere to a legal standard in granting clemency and, so long as the approved sentence is one that is authorized, is not required to reassess a sentence after disapproving findings of guilty and thereafter setting aside and dismissing the related specification and charge purely as an act of clemency. *Cf. United States v. Craig,* 28 M.J. 321, 324 (C.M.A.1989) (where appellant's claims did not raise legal error, "no recommendation as to an appropriate corrective sentence was necessary" under R.C.M. 1106(d)); *United States v. Welker,* 44 M.J. 85, 89 (C.A.A.F.1996) (where no legal error existed at trial, SJA did not err in not discussing the issue raised in the accused's clemency petition).

Our analysis does not end with the conclusion that sentence *reassessment* is not required. The second obligation still remains: the convening authority must always determine the sentence remains *appropriate* in

---

authority that Article 125, UCMJ was Constitutional as applied to appellant and, accordingly, no legal error had occurred.

**2.** We recognize there can be "middle ground" between sentence reassessment and pure sentence clemency, when the SJA does not concede legal error but recommends some form of relief in light of "*possible* legal error." *See, e.g., United States v. Meek,* 58 M.J. 579 (C.G.Ct.Crim.App. 2003), *pet. denied,* 59 M.J. 33 (C.A.A.F.2003).

We agree the better practice in cases where there may have been error committed would be for the SJA to advise the convening authority on the standard for sentence reassessment. We disagree, however, with our sister service court that the SJA's failure to do so in a case of *possible* legal error constitutes error per se. *Meek,* 58 M.J. at 580–581. If there is, in fact, no predicate trial error, there is no requirement to advise on or grant sentence reassessment.

light of the disapproved findings. R.C.M. 1107(d)(2)("[t]he convening authority shall approve that sentence which is warranted by the circumstances of the offense[s] and appropriate for the accused.") Here, the consensual sodomy conviction the convening authority disapproved was significantly less egregious than appellant's other misconduct. Appellant, a married man fourteen years older than his victim and a NCO with over seventeen years of military service, raped an intoxicated junior enlisted soldier who just arrived at the unit on her first permanent duty assignment. His victim was particularly vulnerable, having joined the Army to gain confidence and start a new life after divorcing an abusive spouse. Appellant took advantage of his status and his ready access to the victim, who lived in the barracks across the hall from him and trusted him as a NCO. As his company commander testified, the barracks should be a safe haven; appellant turned that safe haven into a crime scene.

The convening authority's disapproval of the findings of guilty of consensual sodomy was an act of clemency with its own independent benefit to appellant. Reducing the number and nature of appellant's convictions was, in itself and regardless of any action on his sentence, leniency on the part of the convening authority. *See Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) ("[A] separate *conviction* ... has potential adverse collateral consequences that may not be ignored."). Having granted clemency on the findings, the convening authority granted further relief by approving a sentence he believed appropriate based on the facts and circumstances in the case. Conducting our own review of the appropriateness of the findings and the sentence under Article 66(c), UCMJ, we reach the same conclusion. Appellant's sentence is an appropriate punishment for his crimes.

The remaining assignments of error are without merit. The findings of guilty and the sentence are affirmed.

Senior Judge MAHER and Judge HOLDEN concur.