# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38988**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Benjamin C. TODD**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 June 2017

————————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Bad-conduct discharge, confinement for 5 months, and reduction to E-1. Sentence adjudged 2 December 2015 by GCM convened at Joint-Base San Antonio-Lackland, Texas.

*For Appellant:* Major Annie W. Morgan, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, HARDING, and C. BROWN, *Appellate Military Judges*

Judge C. BROWN delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge HARDING joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

C. BROWN, Judge:

A general court-martial consisting of a military judge sitting alone, convicted Appellant, consistent with his pleas and pursuant to a pretrial agreement (PTA), of two charges and three specifications of wrongfully possessing child pornography, in violation of Article 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for five months, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal Appellant raises three assignments of error: (1) the staff judge advocate (SJA) improperly solicited a victim impact statement from AA, a non-victim; (2) the military judge erred by refusing to conduct an in camera review of victim AC's mental health records after AC's unsworn victim impact statement referenced depression; and (3) the military judge abused her discretion by curtailing defense counsel's sentencing argument.[2] Finding no error that prejudiced a material right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

Appellant, who was between 21 and 22 years old at the time of the charged offenses, engaged in variety of relationships with four different teenage girls: AC, AG, LC, and AA. Appellant met all but AA when they were 15 years old; AA was 16 years old. These relationships served as the genesis for Appellant's possession of child pornography convictions. Appellant and AC exchanged sexually explicit photographs and videos of each other masturbating while naked when AC was 15 years old and engaged in a sexual relationship after she turned 16. Appellant exchanged sexually explicit pictures with AG when she was 16. Appellant met LC online and they engaged in mutual naked masturbation over "Skype." Despite LC asking Appellant not to tell anyone about their masturbation sessions, Appellant took and kept "screenshots" of LC masturbating over "Skype." Appellant also communicated indecent language to AA via text message. This conduct resulted in a charge of communicating indecent language in violation of Article 134, UCMJ which was dismissed at trial pursuant to Appellant's PTA. Despite the dismissal, Appellant stipulated to the underlying facts of this offense along with all but one of the other charges and

---

[1] In accordance with Appellant's PTA, two charges and three specifications of indecent exposure, in violation of Article 120, UCMJ, 10 U.S.C. § 920, and one charge and one specification of indecent language and one specification of wrongfully possessing child pornography, in violation of Article 134, UCMJ, were withdrawn and dismissed after the military judge announced findings.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Having considered Appellant's arguments, we summarily reject them as they do not require additional analysis or warrant relief. *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

specifications dismissed at trial.[3] Appellant also agreed not to object to AA providing a victim impact statement at trial for consideration on his rehabilitation potential.

## II. DISCUSSION

### A. AA's Victim Impact Statement

Subsequent to Appellant's court-martial, the convening authority's SJA solicited victim impact statements from the victims of the offenses to which Appellant pleaded guilty and AA, the alleged victim of one of the dismissed charges. Only AA provided a statement. The statement, which was identical to the one she provided at trial, was attached to the staff judge advocate's recommendation (SJAR), and the complete SJAR was served on Appellant and his counsel. In response, the Defense raised several errors, but they did not object to the convening authority considering AA's victim impact statement. Appellant now alleges it was error for the SJA to solicit a victim impact statement from AA as she did not meet the definition of a victim under Article 6b(b), UCMJ, 10 U.S.C. § 806(b),[4] making it improper for the convening authority to consider the statement under Rule for Courts-Martial (R.C.M.) 1107(b)(3)(A)(iv).[5] Appellant believes he was prejudiced when the convening authority considered the statement because it contained "uncharged matters" thereby reducing the likelihood the convening authority would grant Appellant clemency. He asks this court to order new post-trial processing. We are not persuaded.

The proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. LeBlanc,* 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (citing *United States v. Sheffield,* 60 M.J. 591, 593 (A.F. Ct.

---

[3] Appellant did not stipulate to the facts of Charge II, Specification 4, which alleged wrongful possession of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[4] Article 6b(b), UCMJ states: "In this section, the term 'victim of an offense under this chapter' means an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense under this chapter (the Uniform Code of Military Justice)."

[5] Pursuant to R.C.M 1107(b)(3)(A)(iv), prior to taking action, the convening authority is required to consider "[a]ny statement submitted by a crime victim pursuant to R.C.M. 1105A and subsection (C) of this rule. R.C.M 1105A(b) states: "*'Crime victim' defined.* For purposes of this rule, a crime victim is a person who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty, and on which the convening authority is taking action under R.C.M. 1107."

Crim. App. 2004)). "Absent defense waiver or forfeiture, erroneous advice on substantial matters of fact or law will invalidate the action when the error prejudices the accused." *United States v. Kerwin*, 46 M.J. 588, 590 (A.F. Ct. Crim. App. 1996) (citation omitted).

Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error. R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, Appellant must persuade the Court that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (citations omitted). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least "a colorable showing of possible prejudice in terms of how the [alleged error] potentially affected an appellant's opportunity for clemency." *Id.* at 437.

We need not address whether the SJA erred in attaching AA's victim impact statement to the SJAR or whether AA meets the definition of a "crime victim" under Article 6(b)(b), UCMJ, and R.C.M. 1105A(b) as Appellant has not made a colorable showing of possible prejudice with regards to the convening authority considering AA's statement prior to taking action in Appellant's case. The SJAR properly advised the convening authority that he must consider all matters submitted by Appellant and he may consider the record of trial prior to taking action.[6] Appellant and his trial defense counsel were given an opportunity to comment on the contents of the statement, but declined to do so. Despite Appellant's contention that the convening authority considering AA's statement diminished his chances for clemency as it discussed matters in aggravation concerning offenses which were dismissed at trial, Appellant himself made the statement relevant and part of the record of trial when he stipulated to the facts of the dismissed charge involving AA and agreed to allow her to present the unsworn statement during pre-sentencing proceedings. Accordingly, we find Appellant has made no colorable showing of prejudice with regards to the convening authority considering AA's statement and thus decline to order new post-trial processing.

## B. AC's Mental Health Records

During her oral and written unsworn statement, AC stated that she was treated for depression after her relationship with Appellant. Trial defense counsel objected to the military judge considering her treatment for depression or, in the alternative, asked to renew a motion he had made pre-trial with regards to production of AC's mental health records pursuant to Mil. R. Evid.

---

[6] R.C.M. 1107(3)(A)(iii), (B)(i).

513. After hearing defense counsel's objection, the military judge ruled that Appellant had waived his right to the motion pursuant to his PTA and stated she would consider AC's entire statement. Appellant now claims the military judge erred in not addressing whether, in light of AC's statement, the Defense had made a threshold showing to warrant an in camera review of AC's mental health records to potentially rebut her statement that Appellant's conduct caused her to be treated for depression. *United States v. Klemick*, 65 M.J. 576, 580 (N-M. Ct. Crim. App. 2006). As such, Appellant asks this court to order a *DuBay* hearing to allow a military judge to examine AC's mental health records in camera and determine whether any mental health records should have been provided to Appellant's trial defense counsel under the constitutionally required exception[7] to Mil. R. Evid. 513. *United States v. Dubay*, 17 C.M.A. 147 (C.M.A. 1967).

When an appellate issue concerns the meaning and effect of a PTA, interpretation of the agreement is a question of law, subject to review under a de novo standard. *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006). "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). When an appellant waives a known right at trial, "it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (citing *United States v. Harcrow,* 66 M.J. 154, 156 (C.A.A.F. 2008)).[8] Our superior court has held that an accused may offer to waive several significant rights as part of a pretrial agreement. *United States v. McFadyen*, 51 M.J. 289, 290–91 (C.A.A.F. 1999) (citing *United States v. Rivera,* 46 M.J. 52 (C.A.A.F. 1997) (accused may waive evidentiary objections); *United States v. Weasler,* 43 M.J. 15, 19 (C.A.A.F. 1995) (accused may offer to waive unlawful command influence in the preferral of charges in a pretrial agreement); *see United States v. Burnell,* 40 M.J. 175 (C.M.A. 1994) (waiver of trial by court-martial composed of members); *see also United States*

---

[7] Mil. R. Evid. 513 no longer contains this exception, but did so at the time of Appellant's trial. Mil. R. Evid. 513(d)(8) (2012).

[8]      Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.

*United States v. Feliciano*, 76 M.J. 237, No. 17-0035, 2017 CAAF Lexis 482, at \*5–6 n.2 (C.A.A.F. 2017) (quoting *Gladue*, 67 M.J. at 313).

*v. Gansemer*, 38 M.J. 340 (C.M.A. 1993) (waiver of administrative board is permissible)).

PTAs are governed by R.C.M. 705(c), which identifies prohibited and permissible terms and conditions. "A [PTA] in the military justice system establishes a constitutional contract between the accused and the convening authority." *United States v. Smead,* 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *Lundy,* 63 M.J. at 301).

> In a typical pretrial agreement, the accused foregoes certain "constitutional rights . . . in exchange for a reduction in sentence or other benefit. As a result, when interpreting pretrial agreements, 'contract principles are outweighed by the Constitution's *Due Process Clause* protections for an accused.' In a criminal context, the government is bound to keep its constitutional promises . . ." *Id.* (quoting *United States v. Acevedo,* 50 M.J. 169, 172 (C.A.A.F. 1999) (citations omitted)).

*Smead*, 68 M.J. at 59.

"It is the military judge's responsibility to police the terms of pretrial agreements to insure compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness." *United States v. Riley*, 72 M.J. 115, 120 (C.A.A.F. 2013) (citations and internal quotation marks omitted). "To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *United States v. Smith*, 56 M.J. 271, 272–73 (C.A.A.F. 2002) (citing *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969)). Although the President has prohibited the waiver of certain fundamental rights in a PTA, the waiver of discovery, including the right to production of mental health records pursuant to Mil. R. Evid. 513, is not among them.[9]

Here, Appellant filed a pretrial motion concerning AC's mental health records pursuant to Mil. R. Evid. 513. During the PTA inquiry, the military judge specifically inquired about the substance of motions covered by the "waive all waivable motions" term in Appellant's PTA. First, she asked Appellant if he was aware his counsel had filed several pretrial motions, including a Mil. R.

---

[9] R.C.M. 705(c)(1)(B) states:

> A term or condition in a pretrial agreement shall not be enforced if it deprives the accused of: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete sentencing proceedings; the complete and effective exercise of post-trial and appellate rights.

Evid. 513 motion. She further explained that the waiver provision meant the motions would not be litigated and she would not decide if Appellant was entitled to any relief based on the motions. Appellant responded that he understood the waiver provision and indicated no one had forced him to enter into it.

The military judge went on to ask trial defense counsel to specifically state the basis for the waived motions, including the Mil. R. Evid. 513 motion. Then she instructed Appellant that while any of the motions might have entitled him to relief, the waiver meant his counsel would not litigate the motions, she would not rule on the motions, and they would not be later reviewed by the appellate court to determine if Appellant was entitled to any relief. Appellant again stated he understood the waiver provision and that he voluntarily agreed to its terms. Finally, the parties agreed they would have further discussion concerning a Mil. R. Evid. 412 issue during presentencing and this pending discussion was not contrary to the motion waiver provision. After this exchange, Appellant again stated he had no questions about the waiver of motions provision. The military judge later advised Appellant he could withdraw from his guilty pleas at any time before his sentence was announced and that if he did so, the PTA would be cancelled. Appellant indicated he understood the withdrawal provision.

AC's written unsworn statement was provided to the Defense the night before trial, prior to Appellant affirmatively waiving all waivable motions and before she read the statement in court. After AC read the statement, trial defense counsel objected to the judge's consideration of AC's depression and twice asked to "renew" the Mil. R. Evid. 513 motion filed before trial. When the military judge expressed concerns about renewing motions previously waived by the PTA, defense counsel stated, "I don't disagree with that at all, ma'am." Defense counsel claimed that while he had the written statement prior to court, he did not have the opportunity to interview the witness prior to her reading it in court. The military judge noted the Appellant had voluntarily given up the motions raised by the pretrial filings and that if there was a concern about the unsworn statement provided to Appellant prior to trial it should have been discussed before the waiver as the parties had discussed the Mil. R. Evid. 412 issue as it applied to one sentencing witness. Defense counsel continued to assert that despite having the unsworn statement before trial, they were unaware of the information concerning AC's depression. The military judge reiterated that she had gone over the PTA and its provisions many times, and that Appellant had been given ample opportunity to withdraw from the PTA. The military judge ultimately ruled that she would consider AC's entire statement keeping in mind the appropriate weight given to unsworn statements. Appellant did not withdraw from the PTA.

7

Facing a similar issue, this court in *United States v. Cron,* held the appellant had knowingly and voluntarily waived his right to the production of the mental health records of sentencing witnesses who testified concerning the impact the appellant's crimes had on them. In doing so, the court recognized that an appellant may waive constitutional and procedural protections, including the right to receive material impeachment evidence. *United States v. Cron,* 73 M.J. 718, 733–34 (A.F. Ct. Crim. App. 2014).

Here, Appellant's express waiver of all waivable motions waived his right to the potential production of AC's mental health records, and extinguished his right to raise these issues on appeal. This being the case, we need not reach the issue of whether the military judge erred by not applying Mil. R. Evid. 513 and *Klemick* to determine whether the Defense had made a threshold showing for an in camera review of the contested mental health records.[10]

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED.**[11]

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[10] In *Klemick*, the Navy-Marine Corps Court set out a three-part test to determine whether a party had made a threshold showing for an *in camera* review: (1) did the moving party set forth a specific factual basis demonstrating a reasonable likelihood that the requested privileged records would yield evidence admissible under an exception to Mil. R. Evid. 513; (2) is the information sought merely cumulative of other information available; and (3) did the moving party make reasonable efforts to obtain the same or substantially similar information through non-privileged sources? *Klemick*, 65 M.J. at 580. This court has applied the *Klemick* test. *See United States v. Wright*, 75 M.J. 501, 510 (A.F. Ct. Crim. App. 2015).

[11] We note pages two and three of the Court-Martial Order (CMO) are dated 5 February 2015. This appears to be a typographical error, as page one is dated 5 February 2016, the date of the convening authority's action. Appellant was not prejudiced by this error; however, we direct promulgation of a new CMO to cure the oversight.